# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-01581-SCT

*THE LAMAR COMPANIES*

*v.*

*COCAJO TRUST; CLIFTON B. CLARK, SR., TRUSTOR; COLIN RAY CLARK, TRUSTEE FOR COCAJO TRUST; AND MARY CLARK*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/16/2009 |
| TRIAL JUDGE: | HON. JAMES B. PERSONS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MARK D. HERBERT |
| ATTORNEY FOR APPELLEES: | MACK A. BETHEA |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND REMANDED - 02/17/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., RANDOLPH AND PIERCE, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     In December 2004, the CoCaJo Trust; Clifton B. Clark, Sr., Trustor; Colin Ray Clark, Trustee; and Mary Clark (collectively "the Trust") filed suit in the Chancery Court of Harrison County alleging that Debbie R. Pitts, a/k/a Debbie R. Cuevas ("Pitts"), the former trustee of the Trust, had misappropriated property of the Trust. In 2005, after suit had been filed, Pitts entered into lease agreements with The Lamar Companies ("Lamar") to place outdoor advertising structures, visible to travelers on Interstate 10, on the subject property.

¶2.     In 2009, the Trust sent correspondence to Lamar asserting that Pitts did not own the subject property and was not authorized to execute the 2005 leases; and further notifying

Lamar that a padlocked fence had been constructed around its advertising structures, as well as alleging monetary damages for willful trespass and breach of contract against Lamar. Shortly thereafter, Lamar filed a "Motion for Leave to Intervene" and attached as an exhibit its proposed "Intervener's Complaint for Injunctive, Declaratory, and Interpleader Relief." That proposed complaint sought that the chancery court declare "the rightful and true owner of the subject property[;]" determine "the validity of [Lamar's] sign location leases[;]" and "identif[y] the party or parties to whom it should pay the rentals specified in said sign location leases." The proposed complaint further asked that Lamar be permitted to interplead its rent payments into the court registry, and requested a temporary and permanent injunction to prevent the Trust from denying Lamar access to its sign structures. Thereafter, the chancery court granted temporary injunctive relief, ordering the Trust to permit Lamar "access to its sign structures pending final disposition of this matter" and ordering Lamar to "interplead and deposit into the registry of this [c]ourt any rentals that are now due or which may become due under the terms of its lease agreements with [Pitts] until further order of this [c]ourt." Approximately two months after having granted Lamar a portion of the relief it sought, the chancery court denied Lamar's "Motion for Leave to Intervene," concluding that Lamar's interest would be "adequately protected" by Pitts. From that ruling, Lamar filed a notice of appeal.

**FACTS**

¶3.     On October 9, 1998, Clark, Sr. established the Trust for the "foremost purpose" of providing assistance to his three children "in furtherance of their education beyond the high

2

school level . . . ." Pitts was designated as the trustee.[1] Between November 1998 and January 1999, Clark, Sr. conveyed several properties, as "res of the [Trust]," to Pitts, "in Trust."[2] On April 29, 2002, a "Special Warranty Deed" provided that Clark, Sr. "does hereby sell, convey, warrant specifically and deliver unto" Pitts the subject property located in Harrison County. This "Special Warranty Deed" made *no* reference to the conveyance being "in Trust."

¶4. On December 17, 2004, the Trust filed a complaint against Pitts in the chancery court, alleging that she "refuses to return the parcels deeded to her in trust, . . . has encumbered a parcel of said property, . . . has retained rents and failed to pay said monies into the trust." The complaint sought, *inter alia*, an "[o]rder that [Pitts] re-convey all real property to the trust . . . ." That same day, a "*Lis Pendens* Notice" was filed, alleging that Pitts had "misappropriated" property from the Trust. Pitts's answer acknowledged she "has refused to return the parcels of property. However, she denies they were deeded to her in trust . . . ." According to Pitts, the subject property was conveyed to her, "individually, in fee simple," by Clark, Sr. On March 16, 2005, the Trust filed a "Cancellation of Property Conveyances" against Pitts, "fully restor[ing] all legal rights of same to the duly appointed trustee of [the Trust] . . . ."

---

[1]According to the Trust's amended complaint, Pitts "had a relationship with [Clark, Sr.], but never married him and between them one child was born . . . ."

[2]Among the properties conveyed were the "full legal [r]ights to three (3) Land Lease Agreements" created in December 1996 between Headrick Outdoor, Inc. and Clark, Sr. for "erecting and/or maintaining" advertising structures on the subject property. Lamar purchased Headrick Outdoor in 1996.

¶5.	On May 19, 2005, Pitts entered into "Memorandum of Lease Agreements" with Lamar, "leasing a portion of" the subject property for "an initial term of six (6) years . . . ." On October 6, 2005, Pitts entered into twenty-year "Sign Location Leases"[3] with Lamar for the placement of outdoor advertising structures on the subject property.

¶6.	On April 7, 2009, counsel for Clark, Sr. sent a letter to Lamar which provided that Pitts "is not and has never been the owner of the property, nor has she had the authority to execute a lease with your company on behalf of [Clark, Sr.]; therefore, there should be no payment made to [Pitts] for the lease of the subject property." The letter added that "my client has constructed a pad-locked fence surrounding the signs you have constructed on this property, and any individual caught on the property will be subject to arrest for trespassing." On May 19, 2009, counsel for Clark, Sr. sent a second letter to Lamar which claimed that Lamar owed $123,766.49 in "damages as a result of the company's willful trespass and breach of contract for the lease of the above-described property . . . ."

¶7.	On May 29, 2009, Lamar filed a "Motion for Leave to Intervene," with its proposed "Intervener's Complaint for Injunctive, Declaratory and Interpleader Relief" attached as an exhibit. *See* ¶ 2 *supra* (regarding specific relief sought in the proposed complaint). According to Lamar, Pitts "has claimed . . . ownership of the subject property by way of a special warranty deed from [Clark, Sr.] . . . to [Pitts] . . . dated April 29, 2002. . . . By way of this instrument, Lamar has a facially valid right to maintain its sign structures . . . ." Thereafter, Pitts filed a "Response to Motion for Leave to Intervene and/or Alternative Relief" in support of Lamar's motion.

---

[3]The leases commenced on June 15, 2005.

¶8. Although the document is not included in the record, the docket reflects that on July 9, 2009, a "Motion to Intervene/TRO" noticed by Lamar's attorney was filed and heard. On July 21, 2009, the chancery court granted partial relief to Lamar by ordering:

> the [Trust] and anyone acting for or on their behalf are hereby ordered to refrain from taking any actions to deny [Lamar] access to its sign structures pending final disposition of this matter by this [c]ourt. Included in this order is a requirement that the [Trust], or any party under their control, provide access through any fences that are now currently located on the property which prevent Lamar's free and open access to its sign structures.
>
> . . .
>
> [Lamar] shall interplead and deposit into the registry of this [c]ourt any rentals that are now due or which may become due under the terms of its lease agreements with [Pitts] until further order of this [c]ourt.

¶9. A hearing on Lamar's "Motion for Leave to Intervene" was held on September 16, 2009, at which the chancellor determined that "under Rule 24 . . . the Lamar interest would be *adequately protected* by [Pitts] and her able counsel . . . ." (Emphasis added.) The chancellor added that:

> Lamar wasn't necessary as a matter of discretion on my part. We're having enough trouble getting this lawsuit started and finished as it is . . . the validity or invalidity of the various instruments here insofar as conveyances to a trust or to [Pitts] individually is ultimately what the interest of Lamar turns on, and that is the position here of [counsel for Pitts] and [Pitts].

After the chancery court entered its order denying Lamar's "Motion for Leave to Intervene," Lamar filed a notice of appeal.

## ISSUE

¶10. This Court will consider:

> Whether the chancery court erred in denying Lamar's "Motion for Leave to Intervene."

**ANALYSIS**

¶11. When Lamar filed its "Motion for Leave to Intervene," it attached a proposed "Intervener's Complaint for Injunctive, Declaratory, and Interpleader Relief" to the motion. This proposed complaint was provided in accordance with Mississippi Rule of Civil Procedure 24(c), which requires that a motion to intervene "be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Miss. R. Civ. P. 24(c). In the proposed complaint, Lamar requested that the chancery court declare the true owner of the subject property; determine the validity of Lamar's sign location leases; and identify the party to whom Lamar should pay rent. Of import to this appeal, Lamar further asked that it be allowed to interplead its rent payments into the court registry, and requested a temporary and permanent injunction to prevent the Trust from denying Lamar access to its sign structures.

¶12. A hearing was noticed and, thereafter, the chancery court issued an order that partially granted the temporary relief sought by Lamar. Specifically, the chancellor enjoined the Trust from denying Lamar access to its sign structures, pending a final disposition of the matter, and ordered that Lamar interplead future rent payments into the court registry. Therefore, this Court finds that when the chancery court partially awarded the relief sought by Lamar, it effectively partially granted Lamar's "Motion for Leave to Intervene." In other words, by granting said relief, the chancery court exercised jurisdiction over all parties, including Lamar, and entered a *de jure* ruling which granted partial relief to Lamar. The chancery court's subsequent, substantive analysis on the intervention issue might well have been correct, but for the fact that the die had already been cast by virtue of its July 21, 2009, order.

6

Thus, Lamar should have been permitted to participate in the proceeding as a matter of law. Accordingly, this Court reverses the chancery court's denial of Lamar's "Motion for Leave to Intervene."

## CONCLUSION

¶13.    Based upon the aforementioned analysis, this Court reverses the Chancery Court of Harrison County's denial of Lamar's "Motion for Leave to Intervene" and remands for further proceedings in harmony with this opinion.

¶14.    **REVERSED AND REMANDED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**